UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE ZUBER-JACKSON, | ) | Case No. 1:09 CV 2270 |
| | ) | |
| Plaintiff, | ) | Judge Peter C. Economus |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDED |
| | ) | DECISION |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Stephanie Zuber-Jackson appeals the administrative denial of supplemental security income benefits under 42 U.S.C. §1383(c)(3). Zuber-Jackson contends that she has been disabled since March 17, 2006, due to depression, post traumatic stress disorder, obesity, breast cancer, and degenerative disc disease. [1] She had worked as a laundry room aide in a nursing home, but had lost her job due to poor performance and not calling in when she missed work. (Tr. 271). Following administrative hearing, an ALJ reviewed her claim on April 15, 2009, and determined that Zuber-Jackson was not disabled because she could perform her past relevant work as a laundry aide or, alternatively, she could engage in substantial gainful activity as housekeeper, gasket inspector and kitchen helper based on the testimony from a vocational expert. (Tr. 48). This decision became the final decision of the Commissioner following the Appeals Council's denial of review.  See 20 C.F.R. §416.1481. This matter has been referred to the undersigned for

---

[1] Zuber-Jackson's March 2006 application for SSI benefits, has a protective filing date of March 17, 2006 (Tr. 96-98), and according to the Commissioner's brief, a subsequent May 9, 2008 SSI application, was consolidated with it. (Tr. 99-103). Many of the medical exhibits, though, predate 2006, and were part of the record from Zuber-Jackson's prior SSI June 10, 2005 SSI application. (Tr. 38 n.1, 92-95). As the ALJ vaguely noted, the March 17, 2006 date did not overlap with prior denial, so the ALJ found no attempt at constructive reopening of prior claims. (Tr. 38 n.1)

2

report and recommend disposition pursuant to Local Rule 72.2.

*I. Zuber-Jackson's Contentions:*

Zuber-Jackson challenges the ALJ's findings with the following three arguments:

1. The ALJ erred in failing to find Ms. Zuber-Jackson's breast cancer an additional severe impairment along with the combined effect on depression;

2. The ALJ erred in his determination of Ms. Zuber-Jackson's residual functional capacity; and,

3. The ALJ committed substantial error by failing to obtain a psychological consultative exam or in the alternative, by failing to have a medical expert present at the hearing.

*II. Standard of Review:*

Judicial review is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir.2009) (quoting *Richardson v. Perales*, 402 U.S. at 401). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the

3

decisionmakers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 506 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986). Accordingly, the Court must defer to the ALJ's determination "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

### *III. Sequential Evaluation Process:*

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. See 20 C.F.R. §404.1520(a)(4)(I) and (ii) and §416.920(a)(4)(I) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work."). "At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the

4

claimant's burden to show that [he] is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sec'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

### *IV. Failure to Find Additional Severe Impairments was not Reversible Error:*

Zuber-Jackson contends that the ALJ erred by not finding that breast cancer combined with depression constituted an additional severe impairment.  However, error of this nature alone does not constitute reversible error.

> "When an ALJ determines that one or more impairments is severe, the ALJ 'must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5. And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two "[does] not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987).

*Fisk v. Astrue*, 253 Fed.Appx. 580, 583 (6th Cir. Nov. 9, 2007).

The ALJ did consider Zuber-Jackson's complaints related to depression and breast cancer including chest pain, chronic fatigue and nausea, and problems handling stress, concentrating, remembering, dealing with changes in routine, and inability to complete housework. (Tr. 44,

5

citing Exs. 5E,10E, and 12E).  Accordingly, the ALJ did not create reversible error by not including these conditions among the "severe" impairments at the second step of the sequential evaluation.

*V. Residual Functional Capacity:*

The ALJ found that Zuber-Jackson had the residual functional capacity to perform all basic work activities described in 20 C.F.R. §416.921 and §416.945 to the extent of light work requirements, limited to unskilled work involving simple, repetitive tasks in work environments where changes in work setting, if any, would be routine, and not require more than superficial interaction with co-workers and members of the public. (Tr. 42).  Zuber-Jackson concedes that the ALJ was supported by the reports of non-examining state agency physicians and psychologists (Tr. 306-18, 319-26, 411-26, 434), but she maintains that this evidence was stale since it preceded the onset of breast cancer by more than two years, and subsequent evidence of extensive psychiatric treatment.

*Pain and Fatigue:*

In February 2008 Zuber-Jackson was diagnosed with invasive ductal carcinoma of the left breast. (Tr. 518-19). Left breast lumpectomy was performed followed in June through September 2008 by chemotherapy. (Tr. 519). In November 2008, left axillary lymph nodes were removed, which had no metastatic tumors. (Tr. 514, 570-72, 577). Zuber-Jackson underwent additional radiation therapy from December 2008 through February 2009 (Tr. 495-516).  She argues that her left breast cancer caused excessive fatigue, incontinence and chest pain.

6

However, the evidence cited does not align with this argument. On October 3, 2008, Dr. Obi initially reported  Zuber-Jackson's complaints of "excessive" fatigue, incontinence, left thigh pain, depression and difficulty sleeping. (Tr. 520). However, by December 31, 2008, Dr. Obi reported mild fatigue and left breast pain unchanged since surgery. (Tr. 510).  On January 8, 2009, Dr. Obi reported mild fatigue, grade 1, and complaint of breast pain at the incision. (Tr. 506). Vicodan was prescribed. (Tr. 506). On February 5, 2009, Dr. Obi reported  mild fatigue, grade 1, and breast pain at the incision point. (Tr. 495).  The ALJ rejected Zuber-Jackson's subjective  complaints as exaggerated and lacking any indication that they met the 12-month durational requirement.  (Tr. 40, 45-47). [2]  Zuber-Jackson does not challenge the ALJ's findings discrediting her or support her claim with evidence that her alleged pain, fatigue, and other problems related to lumpectomy had persisted for at least 12 months. Accordingly, the ALJ did not err.

*Depression:*

Zuber-Jackson claims to have a ten year history of depression.  Zuber-Jackson was consultatively examined for the state agency by Dr. Pickholtz on August 23, 2005, whose testing indicated low intellectual functioning. (Tr. 273-75). However, Dr. Pickholtz believed that Zuber-Jackson's actual levels of intellectual functioning were likely higher given her abilities to read and comprehend written statements (*Id*.). Dr. Pickholtz found only mild impairment in attending to and remembering work-related instructions, ability to handle pace, consistency, reliability and

---

[2] For impairments to be disabling, they must meet a 12-month durational requirement. See 42 U.S.C. §423(d)(1)(A); 20 C.F.R. §416.909; *Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643, 113 Soc. Sec. Rep. Serv. 344 (6th Cir. 2006); and see *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988).

7

stress or work-related pressure. (Tr. 276). A reviewing state agency psychologist found no severe mental impairments. (Tr. 306).

On February 27, 2006, Zuber-Jackson went to the emergency room for suicidal ideation (Tr. 338). She did not have an immediate plan but complained that she was depressed related to inability to cope with financial stress (*Id.*). It was reported that she was observed to be sitting with other and laughing and joking. (*Id.*). Reportedly, Zuber-Jackson's memory was good, her judgment and insight were good, she had no signs of though disorder, insight was good and she was noted to be somewhat manipulative. (*Id.*). On February 28, 2006, she was admitted to Huron Hospital with a diagnosis of adjustment disorder with mixed emotional features. (Tr. 340). Zuber-Jackson was discharged on March 1, 2006 after she told Dr. Brar that she felt better and was requesting a discharge. (*Id.*). It was noted that she was sleeping well, eating well, taking her medications and was not suicidal. (*Id.*).

In June 2006, a state agency psychologist reviewed Zuber-Jackson's updated medical records to assess her medical functioning (Tr. 411-26). In assessing the B-criteria the psychologist found mild restriction in activities of daily living, moderate restrictions in social functioning, concentration, persistence and pace and one or two episodes of decompensation. (Tr. 425). The conclusion was that Zuber-Jackson could perform a wide range of tasks in settings with superficial interactions with others, without fast-paced production quotas, where duties were relatively static and any changes would be explained. (Tr. 413).

8

From November 17, to November 23, 2008, Zuber-Jackson was again admitted to Huron Road Hospital for major depression. (Tr. 611). She was released and admitted to Candlewood nursing home where she remained through the date of the administrative hearing. (Tr. 8-9). Ms. Weems, her case manager at Huron Road Hospital, testified at this hearing that Zuber-Jackson was not "functioning correct." (Tr. 8). Ms. Weems stated that Zuber-Jackson was schizophrenic, and stated that Zuber-Jackson could not complete her routine activities. (Tr. 9).

The ALJ accepted depression as one of Zuber-Jackson's severe impairments, but found it restrictive but non-disabling. The ALJ relied on the reports from Zuber-Jackson's treating psychiatrist in 2006, who had assigned a global assessment of functioning score of 64, indicating mild symptoms, yet inconsistently reported that Zuber-Jackson had severe depression and anxiety, problems being around others and poor ability to handle stress. (Tr. 41). [3] The ALJ found inconsistency with the opinions of the treating psychiatrist and other examining and reviewing psychologists. (*Id.*). The ALJ included consideration of the more recent developments including that Zuber-Jackson had been recently divorced and was homeless, and that her condition had stabilized . (Tr. 40-41 n. 10). The ALJ also included in consideration that Zuber-Jackson had reported in November 2006, on her ability to engage fully in normal daily activities and wrote poetry, took care of four children and a grandchild, and helped them with homework. (Tr. 46 n. 31). Zuber-Jackson has not demonstrated that the ALJ's consideration of the evidence regarding depression was not supported by substantial evidence. Accordingly, the ALJ did not

---

[3] Zuber-Jackson states in her Fact Sheet and Statement of Errors that she is not relying on the opinion of a treating physician. (ECF # 14, p. 2).

9

err.

*VI. No further Obligation to Obtain Additional Psychological Consultative Examination:*

Zuber-Jackson complains that no state agency psychological assessments were conducted after 2006, and this additional evidence should have been ordered by the ALJ pursuant to 20 C.F.R. §416.919a(b), which provides that " [a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on ... claim."  As evident from the face of this statement, this regulation does "not require an ALJ to refer a claimant to a consultative specialist, but simply grant[s] him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.'" *Moon v. Sullivan,* 923 F.2d 1175, 1183 (6th Cir. 1990); and see *Landsaw v. Secretary*, 803 F.2d 211, 214 (6th Cir. 1986).  In this matter the lack of recent compelling evidence to support Zuber-Jackson's allegations of disabling depression was no basis for requiring the ALJ to obtain additional consultative examination. The ALJ had the recent medical reports, received the testimony of Ms. Weems, had a list of daily activities from Zuber-Jackson which was consistent with little to no degree of restriction, and had the prior report from the treating physician indicating mild mental impairment.  There were no reasonable grounds for the ALJ to question the mildness of Zuber-Jackson's recent mental health condition. Accordingly, the ALJ did not err.

**VII. Conclusion and Recommendation:**

For the foregoing reasons based on the arguments presented, the record in this matter and applicable law, the undersigned finds that the Commissioner's decision denying SSI benefits was

10

not in error and was supported by substantial evidence. It is recommended that the administrative decision should be affirmed.

                                                   s/James S. Gallas
                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).